# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DAVID JACKSON,

                    Petitioner,

            v.                                          No. 08 CV 7413
                                                        Judge James B. Zagel

ANTHONY RAMOS,

                    Respondent.

## <u>MEMORANDUM OPINION AND ORDER</u>

Following a bench trial in 2003, the Circuit Court of Cook County, Illinois found

Petitioner David Jackson ("Jackson" or "Petitioner") guilty of murder, aggravated discharge of a

firearm, and unlawful use of a weapon. *See People v. Jackson*, No. 1-03-2233 (Ill. App. 2005).

Jackson was sentenced to terms of thirty-five and ten years of imprisonment, respectively, for his

murder and aggravated discharge of a firearm convictions, and a concurrent term of five years of

imprisonment for the unlawful use of a weapon conviction. *Id.* Jackson now petitions for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.[1] For the reasons set forth below, the petition for

habeas corpus is denied.

---

[1] The named respondent is Terry McCann, but Anthony Ramos has replaced Terry McCann as the Acting Warden at Stateville Correctional Center and has been substituted as respondent in this matter. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts; FED. R. CIV. P. 25(d); *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004).

# I. STATEMENT OF FACTS

## A. Testimonial Evidence

Early in the morning of January 20, 2001, Christopher Pitts ("Pitts") was shot and killed. *See* Resp't Ex. P (Trial Transcripts, *People v. David Jackson*, No. 01 CR 5087) at D-34. At approximately 1:00 a.m., Pitts and five of his friends stopped to refuel their van at a gas station on the corner of Augusta and Cicero in Chicago. *Id*. at D-32. Pitts walked to the cashier's window with James Wilson ("Wilson") and another friend. *Id*. at D-125. At the cashier's window, the three friends encountered Jackson's cousin Toniac Jackson. *Id*. At D-126, G-18, G-19-20. Toniac had arrived at the gas station minutes earlier with Jackson and Richard Hodges. *Id*.

In a sworn statement, Jackson said the "word on the street" was that Pitts had known of – but failed to warn anyone about – plans to murder Derrick Jackson, who was David's brother and Toniac's business partner. *Id*. at G-19–G-20. Derrick was subsequently murdered on June 1, 2000, and Toniac had since been searching unsuccessfully for Pitts so that he might recover money or drugs that Pitts owed Derrick. *Id*. At G-20. Toniac verbally confronted Pitts outside of the cashier's window at the gas station. *Id*. at D-126, G-19. Jackson could see the altercation begin as he sat in the driver's seat of the Geo Tracker in which he had driven Toniac and Hodges to the gas station. *Id*. at G-20. When Pitts refused to pay, Toniac threw a beer bottle at him. *Id*. at D-126, G-21.

When Pitts fled in the direction of the van he had arrived in, Toniac gave chase drawing a gun from his waistband and firing several shots. *Id*. at D-127–128, G-21. After Toniac began firing, the van in which Pitts arrived drove away. *Id*. at D-127. At this time, Hodges, who had

been seated in the Tracker, exited the car and began chasing Pitts, firing a gun in his direction. *Id*. at D-128, G-21. Pitts fell when he arrived at the corner of Augusta and Cicero, just outside of the gas station lot, and Hodges caught up to him. *Id*. Wilson and another of Pitts' friends had run down a side street, and when they returned Pitts lay in the street. *See* Resp't Ex. P (Trial Transcripts, *People v. David Jackson*, No. 01 CR 5087) at D-129.

At trial, Wilson testified that he ran away from the gas station once the shooting began, and that he only saw Toniac throw a beer bottle at Pitts. *Id*. at D-56. On cross-examination, however, Wilson admitted that he saw both Toniac and Hodges fire guns at Pitts. *Id*. at D-88-89. Contradicting a pretrial statement he gave to police, Wilson also testified that he saw Petitioner fire a gun at Pitts. *Id*. at D-89-90. Wilson's pretrial statement was introduced into evidence. *Id*. at D-24. Detective James Brock interviewed Wilson on January 20, 2001. *Id*. at D-183, 190. Detective Brock testified that he did not believe that Wilson had said during that interview that he had seen the driver of the Tracker holding or firing a gun. *Id*. at D-195. After the interview, Wilson saw a lineup of seven individuals, including Jackson. *Id*. at D-185–188. He identified Toniac and Hodges as men who had shot at Pitts, but failed to identify Jackson. *Id*. at D-186–188, 195.

Officer John Haritos ("Haritos") of the Chicago Police drove towards the scene after hearing the gunshots. *Id*. at D-151. He testified that he saw two males – subsequently determined to be Jackson and Toniac[2] – run towards and enter the Geo Tracker. *Id*. The officer

---

[2] Officer Haritos identified Toniac while he was on the witness stand at trial. *See* Resp't Ex. P (Trial Transcripts, *People v. David Jackson*, No. 01 CR 5087) at D-151-57. The testimony of Officer Jason Arrends and the sworn statement of David Jackson, described *infra*., corroborate each other in their identification of David Jackson as the second male entering the Tracker.

observed that Toniac had a gun in his hand, but he could not identify the driver of the Tracker, and did not see the driver holding or firing a gun. *Id*. at D-167, 175. Haritos testified that he pursued the Geo Tracker until he saw Toniac exit the car six to eight blocks from the gas station and drop a .25 caliber semi-automatic firearm onto the street. *Id*. at D-154–155, 158. He recovered the .25 caliber firearm, which had one bullet in the chamber, and apprehended Toniac after a brief foot chase. *Id*. at D-155–156, 158.

Officer Jason Arrends ("Arrends") of the Chicago Police heard on his police radio a call to look for the Tracker, and subsequently witnessed it drive by at a high rate of speed. *Id*. at E-81. Arrends located the vehicle parked in front of a residence at 5047 West Ferdinand. *Id*. at E-82. When Jackson approached Arrends as he was securing the Tracker at 1:45 a.m., Arrends arrested him. *Id*.

Jackson met with Assistant State's Attorney Lisa Hennelly ("Hennelly") while he was in police custody on January 20 and 21, 2001. *See* Resp't Ex. P (Trial Transcripts, *People v. David Jackson*, No. 01 CR 5087) at G-5-6. They first spoke at 9:00 p.m. on January 20, but Hennelly did not take a written or recorded statement from Jackson until approximately 11:30 p.m. on January 21 (at which time he had been in custody for approximately forty-six hours). *Id*. at G-5-6, 16, 27. The statement was published into the trial record without objection. *Id*. at G-10. Hennelly testified at trial that Jackson refused the food and drink he was offered while in custody. *Id*.

**B. Petitioner's Statement**

According to Jackson's recorded statement,[3] he arrived at the gas station on the corner of Augusta and Cicero on January 20, 2001 at approximately 12:30 a.m. along with co-defendants Toniac and Hodges. *Id*. at G-18-19. Jackson was driving his wife's Geo Tracker, and the three of them were on their way to Jackson's mother's house to play cards when they stopped to purchase chasers for some Hennessy. *Id*. at G-18–19. Jackson and Hodges stayed in the car while Toniac exited, holding a bottle of beer, and walked to the cashier's window. *Id*. Pitts used to work for Jackson's brother Derrick before Derrick was murdered. *Id*. at G-19–20. Pitts, Toniac, and Muffin were members of the Traveling Vice Lords street gang. *Id*. at G-20.

When Pitts encountered Toniac, Pitts shouted, "Fuck you, motherfucker! I ain't going to pay you shit." *Id*. Toniac then threw his beer bottle at Pitts and missed, at which point Pitts turned and ran around the northeast corner of the building. *See* Resp't Ex. P (Trial Transcripts, *People v. David Jackson*, No. 01 CR 5087) at G-21. Toniac chased after Pitts while holding a gun in his right hand. *Id*. Jackson stated that Hodges then exited the Tracker and ran after both Toniac and Pitts. *Id*. According to Jackson, Toniac regularly carried a .10 millimeter gun, while Hodges regularly carried a .9 millimeter handgun. *Id*.

Jackson stated that he heard shots while Toniac and Hodges were chasing Pitts, and that he witnessed Toniac stop running and fire approximately four times in the direction of Augusta Boulevard. *Id*. at G-21–22. Jackson also saw Hodges following and shooting at Pitts. *Id*.

---

[3] The record reveals that according to Assistant State's Attorney Hennelly, Petitioner was given the option to record his statement in several different forms, including by audio recording and audio-visual recording. Hennelly stated that Petitioner chose to have Hennelly write down the statement, which he subsequently signed.

According to Jackson's statement, when Toniac yelled, "I'm out. I'm out," Jackson exited the Tracker, took a .25 caliber semi-automatic gun from his right pants pocket, and fired at Pitts. *Id.* at G-22–23. He did not stop shooting at Pitts until he thought his gun was empty. *Id.*

Jackson saw a police car as he and Toniac ran back towards their car, and as Jackson was driving from the gas station, he saw Hodges but did not stop to pick him up because the police were too close. *Id.* at G-23. Jackson stated he drove south on Kilpatrick and gave his gun to Toniac, who then jumped out of the Tracker at Kilpatrick and Erie. *Id.* Jackson parked the Tracker on Ferdinand and walked to his aunt's house at 400 North Lawler, but upon discovering that no one was home to let him in, he returned to the Tracker. *Id.* At that point, Jackson encountered officer Arrends and was arrested.

### C. Physical Evidence

At trial, forensic investigator Robert Tovar testified that he recovered seven .9 millimeter cartridge cases near Pitts's body. *See* Resp't Ex. P (Trial Transcripts, *People v. David Jackson*, No. 01 CR 5087) at E-25-26. Tovar also recovered: one .9 millimeter and four .10 millimeter casings along the north side of the gas station; one .10 millimeter casing along the east side; and three .9 millimeter casings along the south side. *Id.* at E-36, 38, 40. Tovar recovered eight .25 caliber casings from the gas station. *Id.* at E-44, 58.

Tovar testified that the van in which Pitts had arrived at the gas station had two bullet holes in the frame of the passenger side, and that he recovered one fired bullet from the front passenger seat. *Id.* at E-49–50. Tovar further testified that a window and living room wall in an apartment on Augusta Boulevard had been damaged by a bullet, and that another bullet was recovered from Pitts' clothing by the medical examiner's office. *Id.* at E-51, 52, 54.

Kris Rastrelli, a forensic scientist specializing in firearms and tool mark identification, determined that the eight .25 caliber casings recovered at the gas station had been fired from the same .25 caliber gun that Officer Haritos recovered immediately before arresting Toniac. *Id.* at E-96, D-161. Rastrelli also concluded that five of the .10 millimeter casings found at the scene were fired from the same .10 millimeter firearm. *Id.* at E-97–98. Each of the eleven .9 millimeter cartridge casings were fired from the same .9 millimeter gun. *Id.* at E-100.

Deputy medical examiner Dr. Tae An testified that, during a January 20, 2001 autopsy he performed on Pitts, he found six entry wounds and six exit wounds on Pitts' body. *Id.* at E-124, 127. Dr. An did not find any evidence of close-range firing, defined as a gunshot fired from approximately two feet away from the target. *Id.* at E-130. Dr. An opined that the cause of Pitts' death was multiple gunshot wounds lacerating multiple internal organs. *Id.* at E-143.

The parties stipulated that Jackson had previously been convicted of a felony. *Id.* at G-36.

In finding Jackson guilty on all counts, the court specifically rejected defense counsel's argument that Jackson's confession was suspect because of the length of time he was in police custody: "I agree with the state the mere fact that he was there for some 40 some hours in and of itself does not mean the statement was somehow coerced." *See* Resp't Ex. P (Trial Transcripts, *People v. David Jackson*, No. 01 CR 5087) at G-50. The court also concluded that it would not be "unusual for a person" like Jackson "who finds him[self] in jail looking at some very, very serious charges" to lose his appetite. *Id.* at G-51. The trial court observed that evidence of Jackson's guilt was corroborated and demonstrated that Jackson had fired multiple gunshots at Pitts. *Id.* at G-52. The trial court ruled that there was sufficient evidence to demonstrate beyond

a reasonable doubt that Petitioner or either of his two co-defendants shot at the van, and that–because the prosecution proceeded under an accountability theory[4]–the prosecution was not required to prove which co-defendant fired gunshots at the van. *Id*. at G-53.

## II. PROCEDURAL HISTORY

### A. State Court Proceedings

**Illinois Trial Court (I).**  On April 7, 2003, Jackson was convicted of murder, aggravated discharge of a firearm, and unlawful use of a weapon following a bench trial in the Circuit Court of Cook County.  The trial court sentenced Jackson to consecutive terms of thirty-five years imprisonment for murder and ten years imprisonment for aggravated discharge of a firearm, as well as a concurrent term of five years of imprisonment for the unlawful use of a weapon.  The trial court further imposed a twenty-year sentence enhancement because of its finding beyond a reasonable doubt that Jackson personally discharged a firearm during the commission of a murder, as well as taking into account his prior felony.  Petitioner's co-defendants Toniac Jackson and Richard Hodges were also convicted of murder, aggravated discharge of a firearm, and unlawful use of a weapon.  *See* Resp't Ex. P at G-36; Resp't Ex. A at 1-2 (Rule 23 Order, *People v. Jackson*, No. 1-03-2233 (Ill. App. 2005)).

**Illinois Appellate Court (I).**  On appeal, Jackson raised four claims: (a) trial counsel was ineffective for failing to move to suppress Jackson's confession; (b) the prosecution failed to prove beyond a reasonable doubt that Jackson committed the offense of aggravated discharge of

---

[4] Illinois law provides that "[a] person is legally accountable for the conduct of another when . . . either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."  720 ILL. COMP. STAT. 5/5-2(c).

a firearm; (c) the trial court abused its discretion in sentencing Jackson to fifty-five years in prison because that sentence was disproportionate to co-defendant Toniac Jackson's sentence of fifty years of imprisonment; and (d) Jackson's twenty-year sentence enhancement for personally discharging a firearm violated the Illinois Constitution and the Fourteenth Amendment. *See* Resp't Ex. B (Pet'r Brief, *People v. Jackson*, No. 1-03-2233); Resp't Ex. C (State's Brief, *People v. Jackson*, No. 1-03-2233). Jackson's appeal was consolidated with those of his co-defendants, and on April 22, 2005, the state appellate court affirmed. *See* Resp't Ex. A.

**Illinois Supreme Court (I).** Jackson filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court, raising two claims: (a) Jackson's twenty-year sentence enhancement for personally discharging a firearm violated the Illinois Constitution; and (b) the prosecution failed to prove beyond a reasonable doubt that Petitioner committed the offense of aggravated discharge of a firearm. *See* Resp't Ex. D. (PLA, *People v. Jackson*, No. 100674). The state Supreme Court denied Jackson's PLA on December 1, 2005. *See* Resp't Ex. E (Order Denying PLA, *People v. Jackson*, No. 100674).

**Illinois Trial Court (II).** On June 28, 2006, Jackson filed a *pro se* postconviction petition pursuant to 725 Ill. Comp. Stat. 5/122-1, *et seq.*, raising three claims: (A) trial counsel was ineffective for failing to:

    (1) file a motion to suppress Petitioner's inculpatory statement;

    (2) move to quash "a subsequent identification of Petitioner in open court";

    (3) introduce evidence that Petitioner was not identified during a pretrial line-up;

    (4) "investigate any real aspects of the instant case and obtain identities of potential witnesses";

(5) consult with Petitioner;

(6) present any viable defense;

(7) interview Petitioner's co-defendants and call them as defense witnesses;

(8) allow Petitioner to testify; and

(9) honor Petitioner's request that he be tried by a jury

(B) Petitioner is "actually innocent"; and

(C) direct appellate counsel was ineffective for failing to argue that trial counsel was ineffective. *See* Resp't Ex. F (Postconviction Petition, *People v. Jackson*, No. 01 CR 5087). The state trial court dismissed the petition on August 31, 2006. *See* Resp't Ex. G (Order Dismissing Postconviction Petition, *People v. Jackson*, No. 01 CR 5087).

**Illinois Appellate Court (II).** Jackson appealed to the state appellate court, raising two claims: (a) the trial court erred in dismissing his petition at the first stage of proceedings because he stated the gist of a meritorious claim of ineffective assistance of trial counsel; and (b) the mittimus[5] should be amended to reflect that Jackson is entitled to credit against his sentence for 881 days spent in pretrial custody. *See* Resp't Ex. H (Petitioner's Brief, *People v. Jackson*, No. 1-06-2798); Resp't Ex. I (State's Brief, *People v. Jackson*, No. 1-06-2798); Resp't Ex. J (Petitioner's Reply Brief, *People v. Jackson*, No. 1-06-2798). The state appellate court affirmed the judgment dismissing Jackson's postconviction petition and modified his mittimus on May 29, 2008. *See* Resp't Ex. K (Rule 23 Order, *People v. Jackson*, No. 1-06-2798 (Ill. App. 2008)).

---

[5] Black's Law Dictionary (8th ed. 2004) defines "mittimus" as (1) a court order or warrant directing a jailer to detain a person until ordered otherwise; (2) [a] certified transcript of a prisoner's conviction or sentencing proceedings; or (3) a writ directing the transfer of records from one court to another.

**Illinois Supreme Court (II).** Jackson filed a PLA in the state supreme court raising one claim: the trial court erred in dismissing his petition at the first stage of proceedings because he stated the gist of a meritorious claim of ineffective assistance of trial counsel. *See* Resp't Ex. L (PLA, *People v. Jackson*, No. 106802). On September 24, 2008, the state Supreme Court denied Jackson's PLA. *See* Resp't Ex. M (Order Denying PLA, *People v. Jackson*, No. 106802).

**Illinois Supreme Court (III).** On November 19, 2008, Jackson filed a motion for leave to file a late PLA from the state appellate court's judgment on his first appeal. *See* Resp't Ex. N (Motion for Leave to File Late PLA, *People v. Jackson*, No. M12239). In the PLA attached to the motion, Jackson asserted that trial counsel was ineffective for failing to file a motion to suppress his confession. *Id*. On March 19, 2009, the state Supreme Court denied Jackson's motion for leave to file a late PLA. *See* Resp't Ex. O (Order Denying Motion for Leave to File Late PLA, *People v. Jackson*, No. M12239 (Ill. 2009)).

### B. Federal Habeas Proceedings

On December 30, 2008, Jackson filed the instant petition for a writ of habeas corpus, raising four claims: (a) trial counsel was ineffective for failing to file a motion to suppress Jackson's confession; (b) the evidence was insufficient to prove Jackson guilty beyond a reasonable doubt of aggravated discharge of a firearm; (c) the state courts erred in holding that Petitioner's postconviction petition failed to "state the gist" of a constitutional violation; and (d) Petitioner is entitled to an evidentiary hearing on his claim that trial counsel was ineffective for failing to call co-defendants Richard Hodges and Toniac Jackson as defense witnesses. *See* Pet. for Habeas Corpus.

## III.  DISCUSSION

A federal court may only grant a writ of habeas corpus when a petitioner shows that he is being held "in violation of the Constitution or law or treaties of the United States."  28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997).

The general standard of review for Habeas petitions is found in Section 2254 of Title 28 of the United States Code, which states:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. . . .

A state court's decision will not be found "contrary to...clearly established Federal law" unless that court applied "a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams v. Taylor*, 529 U.S. 362, 405 (2000), or "decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  An "unreasonable application of" Federal law will be found only when the state court "identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  "Unreasonable in this context means something [. . .] lying well outside the boundaries of permissible differences of opinion."  *Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th Cir. 2009) (Internal quotation marks and citation omitted).

**A. Ineffective assistance of counsel – Failure to file a motion to suppress Petitioner's written statement**

In Ground One of his petition, Jackson argues that he received ineffective assistance of counsel when trial counsel failed to file a motion to suppress his written statement confessing to shooting Christopher Pitts. However, Petitioner fails to satisfy either prong of the relevant standard. For the following reasons I decline to grant habeas relief for Ground One of Jackson's petition:

**i. The *Strickland* Standard**

In *Strickland v. Washington*, the Supreme Court stated a two-prong standard for finding ineffective assistance of counsel: (1) counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's alleged errors or omissions, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). As the State identified in its response brief, on habeas review:

> [t]he question "is not whether a federal court believes the state court's determination" under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold. *Schriro* [*v. Landrigan*, 550 U.S. 465, 478 (2007)]. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not met that standard.

> *Knowles v. Mirzayance*, 129 S.Ct., 1411, 1420 (2009); *see also* Resp't Response

Brief at 16-17.

**ii. Ineffective Assistance of Counsel Analysis**

Here, not only did trial counsel's performance not fall below an objective standard of reasonableness, but furthermore, there exists no reasonable probability that the outcome of Petitioner's trial would have been different but for trial counsel's alleged omission.

The question of whether to file a motion to suppress evidence is generally considered a matter of trial strategy, and is given great deference. *People v. Wilson*, 647 N.E.2d 910, 920 (1994). Counsel is not required to make futile motions in order to provide effective assistance. *People v. Stewart*, 851 N.E.2d 162, 168 (2006). Here, it is easily conceivable that Petitioner's trial counsel was aware of the likely lack of success of a motion to suppress Jackson's statement, and made the decision, as a reasonable matter of trial strategy, to focus efforts elsewhere in the trial.

The state appellate court correctly identified that, in order to establish prejudice based on counsel's failure to file a motion to suppress, Jackson was required to establish a reasonable probability that the motion would have been granted, and that the outcome of the trial would have been different had the evidence been suppressed. *See* Resp. Exh. K at 5, quoting *People v. Spann*, 773 N.E.2d 59, 66 (2002). Here, no such probability existed. There is nothing in the record to support Petitioner's contention that his recorded statement was coerced. The trial court rejected Jackson's closing argument that his confession should be disregarded, stating:

> there has been evidence that [Jackson] was [detained] for a considerable period of time and there has also been evidence that he had not – and the state's attorney testified to it that apparently he had not eaten during that period of time. Quite frankly I can think of several reasons why – a person may not want to eat under those circumstance[s]. I don't think it would be unusual for a person that finds him or herself in jail looking at some very, very serious charges, they may lose their appetite, may not want to eat.

> Resp't Ex. P at G-51**.**

In explaining his decision, the Trial Court judge not only indicated that he believed Jackson willingly gave a truthful statement, but further reinforced the fact that the State did not

have to prove which co-defendant actually killed Pitts.[6]  The reasoning of the trial court, which took into account physical corroboration of Jackson's written statement,[7] reveals that while the outcome of the trial did depend heavily on Jackson's statement, it is highly unlikely that the trial court would have granted any motion to suppress said statement.  The trial court's reliance on physical corroborating evidence further reduces the likelihood that "but for counsel's alleged errors or omissions" the trial would have come out differently.

Trial counsel's failure to move to suppress Jackson's written statement was not unreasonable, and, therefore, does not satisfy the first prong of the *Strickland* standard. Jackson further does not meet the second prong because he fails to establish a reasonable probability that a motion to suppress his statements would have been granted – therefore altering the outcome of the trial – or that the trial would have had a different result but for counsel's failure to move to suppress Jackson's statement.  Thus, I decline to grant habeas relief on ground one of Jackson's petition.

### B.  Aggravated discharge of a firearm in the direction of an occupied vehicle.

---

[6] Judge Thomas Sumner explained:  "So in my opinion, no, there is no evidence that there was any plan of the actions by Mr. David Jackson.  But it sounds to me by his statement that he joined in.  And so whether or not any bullets that were fired from his gun actually struck the victim, it really doesn't matter because he joined in the process.

So state [sic] doesn't have to prove which bullet entered the body, which bullet was the fatal shot.  They didn't have to prove that as long as he was part of that process and joined in that event during the occurrence, because that's what the law says, either before or during, then the evidence is clear by his statement he joined in during the occurrence, that's what accountability is about."  *See* Resp't Ex. P at G-52, 53.

[7] "...I agree with state that there is corroboration.  There is corroboration.  And I agree that we don't have to rely on Mr. Wilson.  Mr. Wilson is but one piece of the puzzle.  No, he wasn't the best witness, but there is physical corroboration as well."  *See* Resp't Ex. P at G-53.

Jackson argues that the State failed to prove beyond a reasonable doubt that he committed the offense of aggravated discharge of a firearm in the direction of an occupied vehicle. However, as the State notes in its Reply Brief, the State Appellate Court reasonably determined that the evidence was sufficient to prove Petitioner guilty of aggravated discharge of a firearm beyond a reasonable doubt. For this reason, which I will discuss in detail below, I decline to grant habeas relief on ground two of Jackson's petition.

Section 2254 of Title 28 of the United States Code dictates that in order for petitioner to be entitled to habeas relief, the state appellate court must have contradicted or unreasonably applied Supreme Court precedent[8] in its holding that any reasonable fact finder could have found that "one, if not more, of the defendants [for whose conduct petitioner was accountable] fired on the van as they fired at Pitts." Resp't Ex. A at 10; *see also* Resp't Ex. P at G-53. Petitioner Jackson does not allege any specific unreasonable applications of Supreme Court precedent, but merely cites 'constitutional due process' as it was articulated in *In Re Winship*. Pet'r Reply Brief at 8, citing *In Re Winship*, 397 U.S. 358, 364 (1970). I surmise that Petitioner is trying to argue that the state appellate court unreasonably applied its 'beyond a reasonable doubt' analysis, as the litany of factual assertions in Petitioner's briefs are all geared toward showing a reasonable doubt of his or his co-defendants' guilt.

The only pertinent fact upon which Petitioner lands is his statement that

---

[8] Alternatively, under the fact prong of § 2254, Petitioner could demonstrate that the Illinois Appellate Court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. . . ." However, the legal and factual analysis here is so closely tied that a conclusion of reasonable determination of the facts in light of the evidence presented is inherent in my finding that the Illinois Appellate Court correctly applied its 'beyond a reasonable doubt' analysis. Thus, while I only discuss the law prong of § 2254 in detail, it should be clear that I find Petitioner failed to meet the fact prong as well.

[t]he existence of three holes in the van, without any evidence that any of the co-defendants intentionally fire [sic] at the van, and without any evidence as to when those bullet holes were created, does not prove beyond a reasonable doubt that David Jackson or his co-defendants discharged a weapon in the direction of an occupied vehicle. Indeed, even if the van did sustain the bullet holes while parked in Cicero, the State failed to prove that the vehicle was occupied when it was fired upon.

Pet. for Habeas Corpus at 14.

Petitioner is correct that the *mere* existence of bullet holes in the van would not have been sufficient to prove aggravated discharge of a firearm in the direction of an occupied vehicle beyond a reasonable doubt. However, testimony at trial showed both of Petitioner's co-defendants chasing Pitts and shooting at him as he ran in the direction of the moving van. The *Jackson* standard cited by both Petitioner and the Illinois Appellate Court is relevant. *Jackson*, as articulated by the state appellate court, states that, "where a criminal conviction is challenged based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Here, a reasonable jury could clearly find from the trial testimony that Toniac and Hodges discharged firearms in the direction of an occupied vehicle (Jackson makes no argument that the van moved of its own volition) beyond a reasonable doubt.

### C. Dismissal of postconviction petition

Jackson argues that his postconviction petition stated "the gist of" a constitutional violation – that trial counsel was ineffective for failing to file a motion to suppress petitioner's written statement. However, I need not analyze Petitioner's postconviction petition on the merits, as "errors of state law in and of themselves are not cognizable on habeas review. The

remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004).

As the federal constitution does not require that states provide collateral review of criminal convictions, an error in state collateral review generally cannot form the basis for federal habeas relief**.** *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).  Such an error can only form the basis for federal habeas relief if it "violates some independent constitutional right[.]" *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996).

Here, Petitioner's allegations are tantamount to an assertion that the state court's refusal to grant him an evidentiary hearing on his first ineffective assistance of counsel claim[9] violated Illinois postconviction law.  In his initial petition, Jackson's Ground Three argument is largely a reprint of his Ground One argument.[10]  Jackson tries unsuccessfully to augment this argument in his reply brief by citing *Miranda*, but still fails to allege the type of constitutional violation necessary for a Federal court to intervene.

If Petitioner wishes to successfully allege the violation of a specific right under federal law, he must draw a strong connection between his Federal right and the trial court's alleged evidentiary errors to render his claim cognizable on habeas review.  *United States ex. rel. Noel v. Hulick* 2009 U.S. Dist. LEXIS 93028, at *5-6 (N.D. Ill. Oct. 5, 2009).  *Perruquet v. Briley*

---

[9] "Ineffective assistance of counsel where the evidence against [Jackson] was largely based on his written statement, and there was evidence that the statement might have been given involuntarily, but defense counsel failed to file a motion to suppress statement." *See* Pet. for Habeas Corpus at 5.

[10] ". . . Jackson's post-conviction petition stated (the gist of) a constitutional violation – that trial counsel was ineffective for failing to file a motion to suppress Jackson's statements." *See* Pet. for Habeas Corpus at 15.

speaks to this issue. 390 F.3d 505 (7th Cir. 2004).  In *Perruquet*, the Seventh Circuit found a

sufficient connection between the alleged violations and the trial court's errors because there:

> the petitioner cited to his Fourteenth Amendment right, articulated the theory of
> self-defense that he wished to pursue, described the evidence that supported his
> theory, and argued that his inability to pursue the theory likely resulted in the
> conviction of an innocent person. [*Perruquet v. Briley*, 390 F.3d 505, 512 (7th
> Cir. 2004)].  The court also construed the petition liberally because the petitioner
> was without counsel.

*Id*.

Here, however, despite granting Petitioner the same benefit by liberally construing

his petition, I still cannot find a sufficient connection between any alleged violation of a

right under federal law and the trial court's alleged errors.  Jackson has failed to cite

specifically to his Fourteenth Amendment rights, or any other federal rights,[11] and while

he has argued that the failure to admit evidence regarding his written statement likely

resulted in the conviction of an innocent person, his argument is unpersuasive.[12]  For the

aforementioned reasons I find that Ground Three of Petitioner's Habeas Petition is

beyond the remedial power of this Court; thus, I decline to intervene.

## 4.  Ineffective Assistance of Counsel – Failure to call Petitioner's co-defendants as defense witnesses

Jackson argues that his allegations of ineffective assistance of counsel warrant an

evidentiary hearing to determine whether Federal Court intervention is necessary to prevent a

fundamental miscarriage of justice where trial counsel failed to interview and call his co-

---

[11] I note that Jackson does make a bare-bones mention of *Miranda* scattered throughout
his two briefs, but does not develop the argument.

[12] As Petitioner Jackson's arguments regarding the facts of the trial are merely reiterated
allegations from his Ground One claim, I reiterate my reasoning from the first issue here in
support of my conclusion that the failure to admit evidence regarding Jackson's written statement
did not likely result in the conviction of an innocent person.

defendants.  Pet. for Habeas Corpus at 21.  However, the State correctly points out that Jackson's fourth claim is procedurally defaulted, for reasons I will explain below.

### a.  Standard for Procedural Default

A claim can be procedurally defaulted if a petitioner fails to exhaust state remedies and gives "the state courts a meaningful opportunity to consider the substance of the habeas claims that he later presents in his federal challenge."  *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001).  To give state courts this meaningful opportunity to consider the claims, a petitioner must invoke "one complete round of the State's established appellate review process."  In Illinois, "one complete round" is completed when a petitioner has presented the habeas claims at each stage of the appellate process, through to the Illinois Supreme Court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  "A petitioner's failure to fairly present each habeas claim to the state's appellate and supreme court in a timely manner leads to a default of the claim, barring the federal court from reviewing the claim's merits." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citing *O'Sullivan*, 526 U.S. at 848).

A federal court may excuse a procedural default if a petitioner either:  (1) shows cause for the default and prejudice arising from failure to review the claims, or (2) demonstrates that failure to review the claims on procedural grounds would result in a fundamental miscarriage of justice.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991);  *Perruquet*, 390 F.3d at 514.

### b.  Procedural Default Analysis

Here, Jackson has not presented his habeas Ground Four[13] to this state's appellate or Supreme courts.  Petitioner does introduce the claim of ineffective assistance of counsel based on failure to call his co-defendants as witnesses in his trial court postconviction petition. However, when ineffective assistance of counsel is raised in the Illinois Court of Appeals, it is only with regard to trial counsel's failure to move to suppress petitioner's statements to Assistant State's Attorney Henelly.  The Seventh Circuit has held that "if a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted" unless the petitioner can meet the requirements of the cause and prejudice exception.  *Pole v. Randolph*, 570 F.3d 922, 935 (7th Cir. 2009); *see also Coleman*, 501 U.S. at 750;  *Perruquet*, 390 F.3d at 514.

In clarifying the prejudice prong of the cause and prejudice exception to procedural default as it applies to ineffective assistance of counsel, the *Coleman* court stated:  "[s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default."  *Coleman*, 501 U.S. at 752 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  As I have already explained, I do not find that Petitioner Jackson has shown he is the victim of attorney error that rises to the level of constitutional ineffectiveness under *Strickland*, and, therefore, he cannot satisfy the

---

[13] ". . . Jackson's allegation that he was denied effective assistance of trial counsel warrant [sic] an evidentiary hearing to determine whether Federal court intervention is necessary to prevent a fundamental miscarriage of justice where counsel failed to interview and call co-defendants who he shows by affidavit are admitted participants in the the [sic] events that led to the death of [Pitts] and state emphatically that [Jackson] never possessed or shot any gun and moreover was unaware of the spontaneous shootout that was taking place, until it was over."  *See* Pet. for Habeas Corpus at 21.

'prejudice' prong of the 'cause and prejudice' excuse to procedural default,[14] despite the attorney error he has alleged.

If a petitioner "seeks to overcome his procedural default by establishing the prospect of a miscarriage of justice, then he must demonstrate that he is actually innocent of the crime for which he was convicted – that is, he must convince the court that no reasonable juror would have found him guilty but for the errors allegedly committed by the state court." *Perruquet*, 390 F.3d at 515, quoting *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995). In his quest to demonstrate his actual innocence, Jackson promises that the provision of affidavits from his co-defendants – his uncle and cousin – would express sincerely "Jackson's lack of participation of any kind, also, personal knowledge of Jackson's actual innocence. Both affidavit's [sic] state that if Jackson's attorney would have called them as witnesses at Jackson's trial, they would have again, emphatically testified as to their personal knowledge of Jackson's actual innocence." Pet. for Habeas Corpus at 21.

A petitioner must support an allegation of actual innocence with "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. The affidavits of two co-defendants and family members are not the type of 'trustworthy eyewitness accounts' envisioned by *Schlup*; nor are they sufficient to convince this court of his actual innocence in light of Petitioner's sworn statement and the physical evidence presented at trial.

---

[14] As both "cause *and* prejudice" need to be shown under the first exception to procedural default, once I have established that no prejudice arises from failure to review the claims, I need not explore the 'cause' prong of the exception. In this case, additional exploration is made further unnecessary by Petitioner's explicit admission that he has failed to show cause for the procedural default. *See* Pet'r Reply at 32.

As I do not find that the addition of testimony from his co-defendants at Jackson's trial would have been so persuasive as to prevent all but the unreasonable juror from finding him guilty, the alleged 'miscarriage of justice' cannot excuse Jackson from procedural default.

## IV. CONCLUSION

Because Petitioner's trial counsel acted reasonably in declining to move to suppress Petitioner's confession; State Appellate Court reasonably determined evidence was sufficient to prove guilt beyond a reasonable doubt of aggravated discharge of a firearm; Petitioner's third claim is noncognizable; and Petitioner's fourth claim is procedurally defaulted for failure to raise it in one complete round of Illinois' established appellate review process and because Petitioner has not established an exception to procedural default, this court cannot review the merits of Petitioner's habeas claims. Petitioner's writ for habeas corpus is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: October 27, 2010